United States District Court
Southern District of Texas
**ENTERED**
August 02, 2022
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

No. 3:18-cv-444

JAMIE LEE COKER, TDCJ #01782357, PLAINTIFF,

v.

DENNIS C. GORE, *ET AL.*, DEFENDANTS.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The plaintiff in this civil-rights action, Jamie Lee Coker, is an inmate in the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ). He has sued under 42 U.S.C. § 1983, alleging he was denied adequate medical care and that a correctional officer used force against him during his hospital discharge. Dkts. 1, 16, 24. Coker is *pro se* and has leave to proceed *in forma pauperis*.

Defendants Melveric Player and B.J. Kimbrough have moved for summary judgment. Dkt. 54. Coker has responded. Dkt. 59. Having considered the parties' briefing, the applicable law, and the record, the court grants the motion in part and denies it in part.

## I.   BACKGROUND

The chronology underlying Coker's claims, as summarized below, is based

on his verified complaint and supplemental pleadings, as well as TDCJ reports and Coker's medical records the parties submitted as part of the summary-judgment record.[1]

On February 7, 2017, Coker underwent an abdominal hernia repair surgery at Hospital Galveston. *See* Dkt. 1 at 13, 28; Dkt. 16 at 2. Coker was discharged from the hospital the following day. *See* Dkt. 16 at 2. TDCJ correctional officer Melveric Player was assigned to escort Coker from his hospital room to the TDCJ transport vehicle. *See* Dkt. 1 at 10. Once Officer Player informed Coker that he was being discharged, Coker told Player that "something was wrong with [his] surgical procedure and that he was experiencing extreme pain and was in dire need of Dr. Gore," the physician who performed the surgery. Dkt. 16 at 4; *see also* Dkt. 1 at 10. Coker alleges that Player "refused to relay that message to [Dr.] Gore" and stated that Dr. Gore had discharged Coker. Dkt. 16 at 4; Dkt. 1 at 10. Coker was transported back to the Wayne Scott Unit that day. Dkt. 1 at 10.

On May 2, 2017, Coker underwent an exploratory laparotomy at Hospital Galveston, due to complications from his previous surgery.[2] *See* Dkt. 1 at 10, 28;

---

[1] The court includes only those factual allegations that are relevant for the purposes of this Memorandum Opinion and Order.

[2] An "[e]xploratory laparotomy is surgery to open up the belly area (abdomen). This surgery is done to find the cause of problems (such as belly pain or bleeding) that testing could not diagnose. It is also used when an abdominal injury needs emergency medical care." *Exploratory Laparotomy*, Saint Luke's, https://www.saintlukeskc.org/health-library/exploratory-laparotomy (last visited July 25, 2022).

2/ 24

Dkt. 16 at 5, 7–8. During the surgery, a surgical clip was found inside Coker's abdomen and was removed. *See* Dkt. 54-2 at 37. Coker's incision was closed with staples. *See id.* Coker describes his surgical wound as an "open wound measuring 8.5 cm X 2.5 cm X 2.5 cm that would have to heal from the inside out being cleaned and washed out twice a day for more or less 3 months." Dkt. 16 at 8.

Around 10:00 p.m. on May 4, two TDCJ officers woke up Coker in his hospital room and informed him that he was being discharged. *Id.* at 10. The officers told Coker that they were pressed for time, and that they would bring his clothes and property down to the loading area so that he could get dressed down there. *Id.* Coker, while handcuffed, was then taken in a wheelchair to the hospital's loading area. *Id.*; *see also* Dkt. 1 at 10. Coker was handed off to Officer Kimbrough, who was one of the TDCJ officers assigned to transport Coker back to his TDCJ unit. *See* Dkt. 1 at 10; Dkt. 16 at 10. The parties dispute what happened next.

According to Coker, Officer Kimbrough asked him where his clothes were, and Coker responded that he was "rushed out" of his room and did not have time to get dressed or collect his property. Dkt. 16 at 10. Officer Kimbrough instructed the two officers who had brought Coker to the loading area to retrieve Coker's clothes and property. *Id.* Coker states that after the officers left to retrieve his belongings, he remembered that his medical discharge instructions had also been left in his hospital room, and Coker asked Officer Kimbrough if he could tell the two officers to grab the folder containing the instructions. *Id.* Officer Kimbrough

questioned why Coker had not taken the folder himself, and Coker replied that he did not have time to do so. *Id.* According to Coker, Officer Kimbrough stated that "Then I guess you won't f****** get it then will ya!" *Id.* Coker then "explained about his operation, the open wound that had to heal from the inside out and the need for this red folder because it had instructions on how to take care of it." *Id.*; *see also* Dkt. 1 at 10. Officer Kimbrough allegedly replied, "You'll get what I give you[,] you stupid son of a b****![,]" to which Coker retorted, "F*** you[,] ya fat bastard[,] what are you gonna do[,] beat me up while I'm handcuffed in this wheelchair[?]" Dkt. 16 at 10. Coker asserts that Officer Kimbrough then "went off," and tried to throw him out of his wheelchair by "radically" shaking the chair back and forth and "running the chair very fast and coming to an abrupt stop, for a total of three times." *See id.* at 11; Dkt. 1 at 10. Officer Kimbrough's actions of shaking and running with the wheelchair caused Coker's surgical wound to tear open and bleed to the degree that Coker's "[hospital] gown was soaked with blood." Dkt. 1 at 10; Dkt. 16 at 11. Coker asserts that Kimbrough's actions also injured his neck and back. Dkt. 16 at 11–12.

Although the defendants have not submitted any affidavits or sworn statements with their motion for summary judgment, they have attached several TDCJ reports and documents relating to the incident.[3] According to the documents

---

[3] These documents include (1) a hand-written Inter-Office Communication by Officer Jacob Gateri (who was present on the day of the incident), dated May 22, 2017 (Dkt. 54-1 at 10); (2) a typed Inter-Office Communication drafted by Shane Lemler, a major at the Estelle Unit, dated May 22, 2017 (*id.* at 11); and (3) a hand-written Inter-

the defendants submitted, after Coker was brought down to the loading area, Officer Kimbrough spoke with him about "how to behave" on the transport back to the TDCJ unit. *See* Dkt. 54-1 at 10. Coker asked Kimbrough for his discharge papers, but Kimbrough informed Coker that, per TDCJ policy, he was not allowed to carry his discharge papers and instead they would be "passed on to the receiving nurse by staff." *Id.* at 17. Coker then started to curse at Officer Kimbrough. *Id.* Kimbrough denies touching Coker. *Id.* Officer Kimbrough reported that after noticing Coker had blood stains on his gown, he called nursing staff and Coker's wound was redressed.[4] *Id.* Officer Jacob Gateri, who was present at the loading area, reported that he did not see Officer Kimbrough shake Coker's wheelchair. *Id.* at 10–11.

Coker was then transported to the Estelle Unit. Dkt. 1 at 10.

---

Office Communication dated May 11, 2017, by Officer Kimbrough (*id.* at 17).

[4] There appears to be some dispute about whether Coker's wound was redressed by a nurse while Coker was still at the hospital. In an Inter-Office Communication about the incident, Lemler reported:

> Hospital Galveston Nurse Bryan Hicks . . . states that he reviewed [Coker]'s chart to try and determine the nurses that redressed [Coker]'s wound, but he was unable to do so. I did review the clinic notes in medical, but the only notes I could find have to do with a dressing change being completed at the Estelle Unit. None of the notes from Galveston dealt with having to redress a wound.

Dkt. 54-1 at 11; *see also id.* at 12, 15. However, both Coker's verified pleadings and the Inter-Office Communication completed by Officer Kimbrough state that Coker's wound was redressed by a nurse while Coker was still at the hospital. *See id.* at 17; *see also* Dkt. 1 at 10; Dkt. 16 at 12.

In December 2018, Coker filed a civil-rights complaint under 42 U.S.C. § 1983, alleging that the following fourteen individuals and entities violated his constitutional rights: (1) Dr. Dennis C. Gore; (2) Bryan Collier, TDCJ Executive Director; (3) Lorie Davis, TDCJ Director; (4) Olugbenga Ojo, Hospital Administrator; (5) Don C. Bosco, Warden at Hospital Galveston; (6) Melverick Player, correctional officer; (7) FNU Kimbrough, correctional officer; (8) "John Doe (Officer Kimbrough's partner)"; (9) Donald E. Muntz, Warden at the Wayne Scott Unit; (10) Dr. Marcus E. Hinkle; (11) Norris D. Jackson, Warden at the Beto Unit; (12) Cheryld Egan, P.A.; (13) the University of Texas Medical Branch (UTMB); and (14) TDCJ. In particular, Coker alleges that Officer Player was deliberately indifferent to his medical needs when he refused to tell Dr. Gore that Coker was in extreme pain and that he thought something had gone wrong with his surgery. Coker asserts that Officer Kimbrough used excessive force against him when he tried to throw him out of his wheelchair by shaking the chair violently and running it back and forth several times, causing Coker's surgical wound to reopen. He also brings a bystander liability claim against Officer John Doe, whom he identifies as Officer Kimbrough's partner on the day of the incident.

As relief, Coker seeks: (1) a declaration stating that his constitutional rights were violated; (2) compensatory damages in the amount of $250,000.00 for "past, present, and future pain, suffering and discomfort, mental anguish, and physi[]ological harm" from the defendants; (3) punitive damages in the amount of

$50,000.00 from Officer Kimbrough and $25,000.00 from Officer Kimbrough's partner; (4) exemplary damages in the amount of $200,000.00 from all of the defendants, jointly and severally; and (5) costs. *Id.* at 13–14. At the court's request, Coker has filed two supplemental statements of his claims. *See* Dkts. 16, 24.

After screening Coker's pleadings as required by the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915A, 1915(e)(2)(B), the court dismissed the claims against Dr. Gore, Dr. Hinkle, Collier, Davis, Ojo, Bosco, Muntz, Jackson, TDCJ, and UTMB for failure to state a claim on which relief may be granted. Dkt. 25. The court severed and transferred Coker's claim against Egan to the Eastern District of Texas, Tyler Division. Dkt. 26. The court then ordered Player and Kimbrough to answer Coker's claims against them. Dkt. 27.

Player and Kimbrough have moved for summary judgment, arguing that the claim against Player was not properly exhausted, that the claims against both defendants are without merit, and that the defendants are entitled to qualified immunity. Dkt. 54. Coker has responded. Dkt. 59.

## II.    STANDARDS OF REVIEW

### A.    Motion for Summary Judgment Under FRCP 56

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v.*

*Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). The initial burden falls on the movant to identify "those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant "may meet its burden by simply 'pointing to an absence of evidence to support the nonmoving party's case.'" *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 544 (5th Cir. 2005) (quoting *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).

Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). The non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (per curiam) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)). "Conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

A reviewing court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment . . . ." *Smith v. Reg'l Trans. Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (quoting *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)).

"It is not the court's role on summary judgment to weigh competing evidence or make credibility determinations." *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017). Factual controversies, however, are resolved in favor of the non-movant only when "both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quotation omitted). Without proof, a reviewing court will not assume that the non-movant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995). Further, a court need not comb the record to find evidence that will permit a non-movant to survive summary judgment. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

Coker proceeds *pro se*. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary-judgment motion. *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence

in the summary-judgment record to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *see also E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts. Pro se litigants must properly . . . present summary judgment evidence[.]") (cleaned up).

### B.   Qualified Immunity

The defendants have invoked the defense of qualified immunity, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"A public official is entitled to qualified immunity unless the plaintiff demonstrates (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012) (quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)). The court may consider the prongs in any order. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

"[Q]ualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (citation and internal quotation marks omitted). After an official has asserted the defense of qualified immunity, the burden is on the plaintiff to "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).

## III.   ANALYSIS

### A.   Exhaustion of Administrative Remedies for the Claim Against Player

Coker alleges that Player denied him adequate medical care when he refused to tell Coker's surgeon, Dr. Gore, that Coker was in "extreme pain," that something was wrong with his surgical procedure, and that he was "in dire need" of Dr. Gore. The defendants argue that Player is entitled to summary judgment because Coker failed to properly exhaust administrative remedies before filing suit. *See* Dkt. 54 at 5. Coker appears to argue that he exhausted this claim in Grievance No. 2017090449. *See* Dkt. 59 at 9.

Administrative exhaustion is mandatory under the PLRA; an inmate bringing an action regarding prison conditions under 42 U.S.C. § 1983 or other federal law must first exhaust all administrative remedies "as are available" before seeking relief in federal court. 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 578 U.S.

632, 641 (2016); *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015). Thus, a prisoner must exhaust available administrative remedies in accordance with all procedural rules, including deadlines, as a precondition to bringing suit. *Woodford v. Ngo*, 548 U.S. 81, 90–94 (2006).

TDCJ has a formal two-step administrative-grievance process that is well established. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *See id*. Once an inmate receives a response to his Step 1 grievance, he then has ten days to file a Step 2 grievance to appeal an unfavorable result at the state level.[5] *See id.*; *see also Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure). A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. *See Johnson*, 385 F.3d at 515.

The Fifth Circuit strictly enforces the exhaustion requirement found in the PLRA. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). Mere substantial

---

[5] The inmate-grievance procedure is also set out in the TDCJ Offender Orientation Handbook. The handbook, which is available on the TDCJ website, confirms that an inmate has fifteen days from the date of the alleged incident to file a Step 1 grievance, and that if the inmate is not satisfied with the Step 1 response, the inmate may appeal the Step 1 by filing a Step 2 grievance. *See* Texas Department of Criminal Justice, *Offender Orientation Handbook* 73–74 (Feb. 2017 version), *available at* https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf (last visited July 25, 2022). Although the TDCJ handbook was not made a part of the record, the court can take judicial notice of the handbook listed on the TDCJ website. *See Huskey v. Jones*, 860 F. App'x 322, 325 n.3 (5th Cir. 2021) (per curiam) (explaining that the court "may take judicial notice of grievance procedures listed on a state's website.") (citing *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam)).

compliance with the TDCJ grievance process is not enough to exhaust remedies as required by § 1997e(a). *Id.* ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion[.]"); *Taylor v. Burns*, 371 F. App'x 479, 481 (5th Cir. 2010) (per curiam) ("The expiration of the time for the prison to respond . . . result[s] in exhaustion only if [the prisoner] . . . timely pursue[s] his grievance at each step of the process.").

The Fifth Circuit has also held that grievances must contain sufficient detail to give prison officials fair notice and an opportunity to address the problem that will later form the basis of a lawsuit. *Johnson*, 385 F.3d at 516–17. The amount of detail necessary will likely depend upon the type of problem of which the inmate is complaining. *Id.* at 517. "If an inmate claims that a guard acted improperly, we can assume that the administrators responding to the grievance would want to know— and a prisoner could ordinarily be expected to provide—details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter." *Id.* (explaining that a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition, such as vermin in a cell or that commissary costs are too high, might not identify any individual).

Coker identifies Grievance No. 2017090449 as exhausting his claim against Player. The majority of the Step 1 for Grievance No. 2017090449 concerns Coker's

dissatisfaction about not receiving any pain medication after his February 7, 2017, surgery, having to ride the bus back to the unit in uncomfortable conditions, and being in continued pain once back at the unit. *See* Dkt. 54-1 at 25–26. At the conclusion of the grievance form, when asked to provide the action requested to resolve the complaint, Coker requested: "Stop the neglect[,] treat us like humans not cattle [and] answer the call of help when someone asks[.] [C]lean[,] sterilize more seating[,] less overcrowding[, and] keep it clean like a hospital [is] supposed to be." *Id.* at 26. As pointed out by the defendants, Coker does not identify Player by name in this Step 1. The only portion of the Step 1 grievance that can be construed to concern Player is the following:

> My grievance is that I was discharged and still had problems that needed attention from a doctor[.] I repeated several times that I needed the doctor and was told by the officer the doctor has discharged you[,] get your stuff together you are going back to your unit. The problem I had was that I was bloated from eating and had not used the bathroom #2 since the 5th[.] I was admitted on the 6th[,] operated on the 7th[,] discharged on the 8th[.] I expressed the whole time of this problem even right before the operation I told the nurse I haven't used the restroom [and] she said don't worry about it! I said I wasn't leaving until I talked to the doctor[.] The officer said then I'll have you removed by force if I have to.

*Id.* at 25.

Although "a plaintiff is not always required to identify a defendant by name in his grievance, he must provide information sufficient for prison officials to investigate his allegations." *McCoy v. Norwood*, No. 7:16-cv-131-O, 2018 WL 11269229, at *3 (N.D. Tex. Nov. 9, 2018).   Even   assuming   that   the   above

description by Coker in his Step 1 references an issue he had with Player, the summary-judgment evidence reflects that Coker did not follow up on his alleged issue with Player in his Step 2 grievance. Instead, the Step 2 grievance solely concerns Coker's medical issues since his hernia surgery. *See* Dkt. 54-1 at 23–24. There is no mention of Player—either by name or by his alleged actions that form the basis of Coker's complaint—in the Step 2 grievance.

Accordingly, Coker has not exhausted his administrative remedies because he did not complete both a Step 1 and Step 2 grievance regarding Player's alleged conduct that forms the basis of his complaint, as required under TDCJ's grievance process. *See, e.g.*, *Bryant v. Strong*, No. Civ A H-11-1586, 2013 WL 504893, at *3 (S.D. Tex. Feb. 7, 2013) (holding that plaintiff did not exhaust his claims against TDCJ officers when plaintiff identified them by name in only his Step 2, and not his Step 1 grievance); *Whiting v. Lambert,* No. 2:16-cv-261-Z-BR, 2020 WL 760409, at *7 (N.D. Tex. Jan. 23, 2020) ("Although the Court does not require that plaintiff specifically mention all defendants by name, [plaintiff] must specifically address each incident complained of in *both* steps of a grievance process to have properly exhausted his claims."), *R&R adopted*, 2020 WL 759420 (N.D. Tex. Feb. 14, 2020).

Coker's deliberate-indifference claim against Player must be dismissed for failure to exhaust. This claim is dismissed with prejudice. *See Donahue v. Wilder*, 824 F. App'x 261, 267 (5th Cir. 2020) (per curiam) ("Failure to exhaust 'usually

results in a dismissal without prejudice,' but *with* prejudice dismissal is warranted when it is 'too late' for the plaintiff to exhaust.") (quoting *Dawson v. Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007)). Because Coker's claim against Player has been dismissed on exhaustion grounds, the court need not address Player's arguments regarding qualified immunity and the merits of Coker's deliberate-indifference claim.

### B.    Use-of-Force Claim Against Kimbrough

Coker alleges that Officer Kimbrough used excessive force against him when he tried to throw him out of his wheelchair by violently shaking the chair back and forth and "running the chair very fast and coming to an abrupt stop, for a total of three times," which caused Coker's surgical wound to split open, soaking his hospital gown full of blood and requiring that his wound be redressed.

"[T]he settled rule [is] that 'the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Payne v. Parnell*, 246 F. App'x 884, 886 (5th Cir. 2007) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). When a prisoner claims that a prison official's use of force violates the Eighth Amendment's ban on cruel and unusual punishment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). When determining "whether unnecessary and wanton infliction of pain was used,"

the court looks to five relevant factors: (1) the extent of the injury suffered by the inmate; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)). Although a *de minimis* injury is not cognizable, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). Significantly, "[t]he amount of injury necessary to satisfy [the] requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances." *Payne*, 246 F. App'x at 888 (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)).

In support of their motion for summary judgment on the excessive-force claim, the defendants make the following brief argument:

> No evidence demonstrates force was applied on Coker on May 4, 2017. Ex. A at 309–327. A search for incident reports or use[-]of[-]force records related to the alleged May 4 incident revealed nothing. Kimbrough did not apply force on Coker, and so no investigations were necessary. Ex. A at 310, 312, 316, 323. Nothing in Coker's medical records shows he suffered an injury because of Kimbrough's conduct. *See* Ex. B. With no evidence to support his allegations about Kimbrough's use of force, Coker's excessive force claim against Kimbrough should be dismissed.

Dkt. 54 at 7. The defendants claim that there is no evidence to support an excessive-

force claim,[6] but Coker's verified complaint (Dkt. 1) and more definite statement (Dkt. 16)—in which he swore under penalty of perjury that the allegations contained therein were true and correct—are competent summary-judgment evidence. *See Hart v. Hairston*, 343 F.3d 762, 764 n.1 (5th Cir. 2003) (finding that inmate's declaration which was sworn to under penalty of perjury was competent summary-judgment evidence) (citation omitted); *Grogan*, 873 F.3d at 279 ("Declarations and verified pleadings that are dated and made on penalty of perjury . . . constitute 'adequate summary judgment evidence.'") (quoting *Stewart v. Guzman*, 555 F. App'x 425, 431 (5th Cir. 2014) (per curiam)); *Cantwell v. Sterling*, 788 F.3d 507, 509 n.1 (5th Cir. 2015) ("The ordinary rules of civil procedure are applicable in prisoner suits. [The plaintiff] offered his testimony under penalty of perjury and declared it to be true and correct, so it must be credited on summary judgment.") (citations omitted). Based on the evidence, the record reflects a genuine factual dispute on each of the five factors.

First, the record reflects a genuine issue as to the extent of Coker's injuries. Coker alleges that his surgical wound was split open and had to be redressed by nurses at the loading area, and that he suffered injuries to his neck and back. His allegations in this suit are consistent with his statements in the inter-office communications and his grievance, both of which were made within days of the

---

[6] The defendants' assertion that no incident reports exist is obviously incorrect. Submitted as part of their own summary-judgment record are several reports created in response to Coker's allegation that Officer Kimbrough applied force to him while he was in a wheelchair. *See, e.g.*, Dkt. 54-1 at 10, 11, 17.

alleged incident. The record therefore reflects a genuine issue of fact. In any event, Officer Kimbrough is not entitled to summary judgment on this ground because the court must focus on the amount of force used, rather than the amount of injury. *See Wilkins v. Gaddy*, 559 U.S. 34, 38–39 (2010).

Next, the record reflects a genuine issue regarding whether force was necessary at the time Officer Kimbrough allegedly used it, the relationship between the need and the amount of force used, whether Kimbrough reasonably perceived a threat, and whether Kimbrough tempered the force. In his pleadings, Coker alleges that Officer Kimbrough was aware that Coker was recovering from surgery, had an incision that needed to heal, and was sitting in a wheelchair while handcuffed. Coker further alleges that Kimbrough, without apparent justification, tried to throw him out of his wheelchair by violently shaking the chair back and forth and running with the chair and then coming to an abrupt stop several times, ultimately causing Coker's incision to bleed and requiring its redressing by nurses at Hospital Galveston. Construing the facts in Coker's favor, he has raised a genuine dispute of material fact as to an Eighth Amendment excessive-force claim, as well as a factual dispute regarding his purported injuries. Officer Kimbrough is therefore not entitled to summary judgment on the question of whether he violated Coker's Eighth Amendment rights.

Because the defendants have invoked the defense of qualified immunity, the court must also determine whether Officer Kimbrough's conduct was objectively

reasonable in light of clearly established law. Clearly established law holds that a prison official violates the Eighth Amendment when the official applies force "maliciously and sadistically to cause harm" or uses force that is "wanton and unnecessary" because it is beyond that reasonably required to maintain or restore discipline. *See Hudson*, 503 U.S. at 6–7; *Payne*, 246 F. App'x at 886. If Officer Kimbrough used physical force maliciously and sadistically to cause Coker harm or force beyond that reasonably required to maintain or restore discipline, then a reasonable officer in Kimbrough's situation would have known that his actions violated clearly established law. Therefore, genuine issues remain as to whether Kimbrough is entitled to qualified immunity. The defendants' motion for summary judgment on the excessive-force claim against Officer Kimbrough will be denied.

### C.    Remaining Defendant

Coker also named "John Doe (Officer Kimbrough's Partner)" as a defendant. *See* Dkt. 1 at 5. Aside from alleging that Officer Doe violated his Eighth Amendment rights, the complaint did not contain any factual allegations against Officer Doe. *See id.* In response to the court's request to describe Officer Doe's personal involvement in the constitutional violations that form the basis of his complaint, Coker replied:

> This Officer John Doe was informed of Plaintiff's operation, knew about Plaintiff's open wound, know about the substantial risk of harm and failed to respond reasonably to protect him when this excessive force was used that was meant to cause harm rather than keep order and was maliciously and sadistically applied knowing that the Plaintiff was no threat to anyone with this open wound, handcuffed in a

wheelchair in his gown and socks.

Dkt. 16 at 12. Construing the pleadings liberally, the court understands Coker to bring a bystander-liability claim against Officer Doe.

"[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Hanna*, 726 F.3d at 646 (citation and internal quotation marks omitted). "Mere presence at the scene of the alleged use of force, without more, does not give rise to bystander liability." *Vasquez v. Chacon*, No. CIV A 3:08-cv-2406-MBH, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009), *aff'd*, 390 F. App'x (5th Cir. 2010); *see also Sanchez v. Griffis*, 569 F. Supp. 3d 496, 517 (W.D. Tex. 2021) (citing *Hanna*, 726 F.3d at 646–47). "An officer must have had a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it in order for the duty to intervene arise." *Vasquez*, 2009 WL 2169017, at *6 (citations omitted). "In evaluating whether an officer took reasonable measures to protect a[n] [inmate], courts have considered both the duration of the alleged use of excessive force by other officers and the location of the [inmate] relative to the officer against which a claimant seeks bystander liability." *Id.* (citations omitted). Further, "[i]n resolving whether a plaintiff has sufficiently alleged a bystander liability claim [courts] also consider whether an officer 'acquiesced[d] in' the alleged constitutional violation." *Hanna*, 726 F.3d

631, 647 (5th Cir. 2013) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

Coker's factual allegations as to Officer Doe are scant. Though Coker has alleged that Officer Doe was present when Officer Kimbrough allegedly assaulted him, he does not allege facts that indicate where Officer Doe was in relation to Officer Kimbrough or that Officer Doe had foreknowledge that the attack would happen. Nor does Coker allege the duration of Officer Kimbrough's assault— although, from his verified pleadings, it appears that the assault was unexpected and did not last very long. Because Coker has failed to allege that Officer Doe had an opportunity to prevent the use of force or that Officer Doe had sufficient time to intervene in the assault, his bystander-liability claim is dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state claim on which relief may be granted.[7] *See Drumm v. Valdez*, No. 3:16-cv-3482-M-BH, 2019 WL 7494443, at *7 (N.D. Tex. Dec. 3, 2019) (dismissing plaintiff's bystander-liability claim under § 1915(e)(2)(B) when plaintiff did not allege facts indicating where the defendant was standing during the assault or the duration of the assault, and thereby failing to allege how the defendant could have prevented the use of force or had sufficient

---

[7] Under 28 U.S.C. § 1915(e)(2)(B)(ii), "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous . . . or fails to state a claim on which relief may be granted." Although the court did not order service on this defendant, the court observes that it does not appear that Coker has exhausted his bystander-liability claim against Officer John Doe. In his Step 1 and Step 2 grievances about Officer Kimbrough's alleged use of force on May 4, 2017, Coker makes no mention of the John Doe officer or any allegations concerning a TDCJ officer who was present but did not help Coker. *See* Dkt. 1 at 31–32.

time to intervene in the use of force), *R&R adopted*, 2020 WL 85163 (N.D. Tex. Jan. 6, 2020); *Skinner v. Gautreaux*, No. CV 20-595-SDD-SDJ, 2022 WL 884915, at *8 (M.D. La. Mar. 24, 2022) (dismissing bystander-liability claim when plaintiff failed to allege that defendant had any knowledge of impending attack or the length of time of the attack and therefore finding that plaintiff failed to allege that defendant had an opportunity to intervene).

### D.   Appointment of Counsel

Coker has previously moved for appointment of counsel. *See* Dkt. 61. In its order denying Coker's request for counsel, the court stated that it would revisit the issue on its own motion as necessary. Under Federal Rule of Civil Procedure 54(b), a court is free to reconsider its earlier orders and decisions "for any reason it deems sufficient . . . ." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).

A district court may appoint counsel for an indigent inmate where a case presents exceptional circumstances, such as a trial that "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination." *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982) (citations omitted); *see also Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015). Because the assistance of trained counsel will be necessary for purposes of a trial and any trial preparation, the court reconsiders its earlier order denying Coker's request for counsel and will now grant Coker's motion for appointment of counsel for further proceedings in this case. The court will temporarily stay this

case until a volunteer attorney can be located and appointed as Coker's counsel of record. Coker's motion for a scheduling order (Dkt. 65) is **denied** at this time, as the court will issue a scheduling order once counsel is appointed.

Finally, consistent with the court's order dated February 22, 2022, (Dkt. 62), the Clerk is instructed to unseal the documents located at Dkt. 54 and Dkt. 54-1. Dkt. 54-2 is to remain sealed.

* * *

For the reasons stated above, the court **ORDERS** as follows:

1. The motion for summary judgment filed by B.J Kimbrough and Melveric Player (Dkt. 54) is **GRANTED** in part and **DENIED** in part.

2. Coker's claim against Melveric Player is **DISMISSED with prejudice**.

3. Coker's bystander-liability claim against Officer John Doe is **DISMISSED with prejudice** under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state claim on which relief may be granted.

4. Coker's motion for a scheduling order (Dkt. 65) is **DENIED** at this time.

5. The Clerk is **INSTRUCTED** to unseal the documents located at Dkt. 54 and Dkt. 54-1. Dkt. 54-2 is to remain sealed.

6. This case is **STAYED** until the court locates a volunteer attorney to represent Coker.  Once counsel is located, the court will re-open this case and issue a separate order for a status conference.

The clerk will provide a copy of this order to the parties.

Signed on Galveston Island this _2nd_ day of ___August_____, 2022.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE